1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

POWER RENTAL ASSET CO TWO, LLC,

Plaintiff,

v.

FORGE GROUP POWER PTY LTD, et al.,

Defendants.

Case No. 17-cv-03621-RS

**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE**

I.  INTRODUCTION

The application of plaintiff Power Rental Asset Co Two, LLC ("Asset Co") for a temporary restraining order and for an order to show cause why a preliminary injunction should not issue was heard on June 28, 2017.  Asset Co seeks to restrain defendant Forge Group Power Pty Ltd, and its receivers and managers (collectively "Forge") from drawing on a $44 million letter of credit provided by Asset Co and issued by defendant Bank of America.  Asset Co contends that the conditions of the agreement between it and Forge specifying when Forge may draw on the letter of credit have not yet been satisfied.  Because Asset Co's reading of the agreement is not tenable, it cannot show the requisite likelihood of success on the merits to warrant preliminary relief, and its application must be denied.

This action grows out of a dispute between Asset Co and Forge as to which of them held "superior right and title to, and interest in" a certain power generation facility, including four GE gas turbine generators ("the Turbines"), located in Australia, at the time Forge commenced insolvency proceedings.  Forge had previously been leasing the facility from a party related to Asset Co.  The details of the parties' respective claims are irrelevant to the issues they have presented here.[1]  After plaintiff initiated litigation in the Middle District of Florida, the parties entered into an "Interim Arrangement Deed" that, among other things, allowed Asset Co to re-lease the facility to a third-party.  Under the Interim Arrangement Deed, Asset Co was required to post the $44 million letter of credit as security, and the parties were to resolve their disputes in an "Australian Proceeding."  Forge would be entitled to draw on the letter of credit in the event it prevailed on its claims in the Australian Proceeding that it in fact had a "superior right or title to, or interest in, the Turbines than that (if any) of the [parties related to Asset Co]."

Apparently proceedings had not yet commenced in Australia at the time of the Interim Arrangement Deed, which therefore contemplated the possibility that litigation might go forward in one of several different courts—or that arbitration might become necessary instead.  The document defined "Australian Proceeding" as a proceeding commenced or to be commenced by either side, where:

> (a) such proceeding is commenced in the Supreme Court of New South Wales, or if the Supreme Court of New South Wales is unable or unwilling to hear the matter, in the Federal Court of Australia (Sydney Registry) or, if the Federal Court of Australia (Sydney Registry) is unable or unwilling to hear the matter or if the parties agree in writing, in the Supreme Court of Western Australia; or

> (b) in the event that the Supreme Court of New South Wales, the Federal Court of Australia (Sydney Registry) or the Supreme Court of Western Australia are each unable or unwilling to hear the matter

---

[1] The precise identities of the parties who acted at various points in time are likewise irrelevant at this juncture.  This order therefore will not distinguish between Asset Co and its predecessors and related entities, or between Forge and its receivers and managers.

United States District Court
Northern District of California

United States District Court
Northern District of California

> or decline jurisdiction and the parties do not agree in writing
> to approach another Australian court to hear the matter, such
> proceeding will be resolved by arbitration . . . .

As it turned out, litigation was commenced in the Supreme Court of New South Wales, which ultimately ruled that Forge had superior title to the Turbines under Australian law. Asset Co appealed as a matter of right to the Court of Appeal, Supreme Court New South Wales, which affirmed the trial court's determination. Asset Co then sought "special leave to appeal" to the High Court, which Forge asserts is Australia's functional equivalent of the U.S. Supreme Court. The High Court denied leave to appeal earlier this month, stating "[a]n appeal to the Court would enjoy no prospect of success."

Forge then communicated its intent to draw on the letter of credit. Asset Co immediately filed this action in San Francisco Superior Court to prevent Forge from doing so. Forge removed the action to this court, basing jurisdiction on diversity of citizenship.

Asset Co's contention that Forge is not yet entitled to draw on the letter of credit (or, "the Bond") rests on the following provisions of the Interim Arrangement Deed.

> Forge may make demand under the Bond and is entitled to receive . . . the proceeds of the Bond if . . .
>
> (A) a finding or determination is made in the Australian Proceeding to the substantive effect that any of Forge or the Receivers have a superior right or title to, or interest in, the Turbines than that (if any) of [Asset Co];
>
> (B) any period within which any party to the Australian Proceeding may appeal from a final or summary judgment or order in the Australian Proceeding to the effect referred to in [section (A)] has expired without any party having initiated any such appeal in that period; and
>
> (C) Forge has provided to the [Asset Co] five Business Days' notice in writing of its intention to make demand under the Bond

Asset Co insists Forge has not shown and cannot show that condition (B) has been satisfied

CASE NO. 17-cv-03621-RS

3

1   under its literal terms because the period for appealing the trial court's determination did *not*

2   expire "without any party having initiated any such appeal in that period." Rather, Asset Co

3   argues, it not only timely appealed the trial court decision, but also the appellate ruling.

4          Asset Co also is arguing that the underlying dispute between the parties has not been

5   resolved (notwithstanding the decisions by the Australian courts), and that an arbitration has been

6   commenced to do so. Asset Co seeks to enjoin disbursement from the letter of credit until

7   conclusion of that arbitration. Asset Co contends it was entitled to initiate arbitration because, in

8   rejecting "special leave to appeal," the High Court effectively "declined jurisdiction." Asset Co

9   argues this brings into play the provisions of the Interim Arrangement Deed that define the

10  "Australian Proceedings" to include the option of arbitration if the courts were "unable or

11  unwilling to hear the matter" or "decline[d] jurisdiction."

12

13                                    II.  DISCUSSION

14         A request for a temporary restraining is evaluated by the same factors that generally apply

15  to a preliminary injunction. *See Stuhlbarg Int'l. Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832,

16  839 n. 7 (9th Cir. 2001). Thus, as a form of preliminary injunctive relief, a TRO is an

17  "extraordinary remedy" that is "never granted as of right." *Winter v. Natural Res. Def. Council*,

18  *Inc.*, 555 U.S. 7, 24 (2008). To obtain preliminary relief, a plaintiff must "establish that he is

19  likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

20  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

21  public interest." *Id*. at 21-22. The Ninth Circuit has clarified, however, that courts in this Circuit

22  should still evaluate the likelihood of success on a "sliding scale." *Alliance for Wild Rockies v.*

23  *Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ("[T]he 'serious questions' version of the sliding

24  scale test for preliminary injunctions remains viable after the Supreme Court's decision in

25  *Winter*."). As quoted in *Cottrell*, that test provides, "[a] preliminary injunction is appropriate

26  when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the

27  balance of hardships tips sharply in the plaintiff's favor," provided, of course, that "plaintiffs must

28

also satisfy the other [*Winter*] factors" including the likelihood of irreparable harm. *Id*. at 1135.

Here, Asset Co's showing as to the likelihood of irreparable harm is not especially strong. This is, fundamentally, a dispute about money. While Forge's status as a bankrupt entity may support an inference that Asset Co would face significant challenges in recovering monies paid out under the letter of credit were its other legal arguments ultimately to prevail, it has not shown that monetary recovery would necessarily be unavailable or inadequate. Nor has it even proffered facts or argument to show it likely will succeed in its effort to trigger arbitration, or on the merits of its claims in any such arbitration.[2]

More importantly, however, Asset Co has made no showing of a likelihood of success on the merits of the claim it is pursuing in *this* action—i.e., that Forge has no right to draw on the letter of credit at this juncture. Asset Co may be correct that a literal, hyper-technical, reading of the language of condition (B) suggests that the mere fact a timely appeal is ever *filed* precludes satisfaction of the condition. Forge has offered evidence that Australian law, like the law here, does not permit such a reading, given the resulting absurdity. Were Asset Co allowed to foreclose recovery permanently under the letter of credit merely by filing an appeal, the very posting of the letter of credit would be rendered meaningless.

At oral argument, Asset Co backed away from its literal reading argument and insisted its construction of condition (B) need not lead to absurd results because Forge would still have been entitled to draw on the letter of credit had the court appellate process ended in a decision on the

---

[2] The prong of the test for injunctive relief that involves an evaluation of the movant's chance of success on the merits looks to the legal and factual questions presented in the proceeding where the injunction is sought. Here, that means Asset Co must demonstrate the merits of its argument that the conditions for Forge to draw on the letter of credit have not been satisfied. The merits of the underlying arbitration are not relevant to that question. Nevertheless, Asset Co's chances of success at arbitration *is* relevant to the issue of the likelihood—or lack thereof—that it will suffer irreparable harm in the absence of injunctive relief. If Asset Co does not have the right to arbitrate the dispute, or if any arbitration is unlikely to result in a ruling in Asset Co's favor that effectively overrides the Australian Court's decision, there can be no harm to Asset Co resulting from Forge drawing on the line of credit now. Asset Co's failure to offer substantive argument on the merits of its arbitration claim therefore further undermines its contention that it has adequately shown irreparable harm will result absent injunctive relief.

United States District Court
Northern District of California

CASE NO. 17-cv-03621-RS

merits by the last court to which appeal was made. Asset Co claims the only reason condition (B) has not been satisfied is that the Australian High Court was "unwilling to hear the matter" and/or "decline[d] jurisdiction," rather than rendering a decision on the merits. There are at least two flaws with this argument.

First, Asset Co fundamentally contradicts itself by arguing in the first instance that the literal language of condition [B], on its face, can only mean that the condition cannot be satisfied if any timely appeal has ever been made, but then urging an absurd result can be avoided by looking beyond the plain language of condition [B] and engrafting an implied exception for appeals that have had certain outcomes. By doing so, Asset Co effectively concedes condition [B] cannot be given the literal interpretation it has otherwise been advancing.

Second, and equally importantly, Asset Co's argument rests on a completely untenable reading of the definition of "Australian Proceedings" in the Interim Arrangement Deed. As set out above, that term is defined as a proceeding commenced in (1) the Supreme Court of New South Wales, (2) the Federal Court of Australia (Sydney Registry) or, (3) the Supreme Court of Western Australia—all three of which are trial courts. *See* definition, subparagraph (a). The definition goes on to provide that if *those three trial courts* "are each unable or unwilling to hear the matter or decline jurisdiction" then the dispute will be resolved by arbitration. *See* definition, subparagraph (b). Nothing in the definition provides for resort to arbitration, or that the trial and appellate level decisions are somehow not final, merely because the High Court is "unwilling to hear the matter or decline[s] jurisdiction." [3] Thus, while the fact that the High Court let the trial and appellate court rulings stand is relevant to satisfaction of condition [B], the fact that it did not do so after entertaining an appeal on the merits is of no consequence.

---

[3] As Asset Co points out, the final clause of the definition of "Australian Proceeding" states that appeals or cross-appeals from any judgment, order, or award in "such proceeding" are included. Thus, the appeals (and the dispositions of the appeals) fall within the definition of "Australian Proceeding." That does not, however, somehow make the very specific language regarding any of the three trial courts being unwilling to hear the matter or declining jurisdiction applicable to the High Court's discretionary refusal to grant special permission to appeal.

1        Finally, even assuming there were a strong argument that the language of condition [B]

2  must be enforced literally notwithstanding the fact that it would render other portions of the

3  contractual language effectively meaningless, that would not suffice to meet Asset Co's burden to

4  show a likelihood of success on its claims in this action. Asset Co is proceeding under California

5  Commercial Code §5109, which provides a court may enjoin an issuer from honoring a demand

6  under a letter of credit where the demand is "materially fraudulent."[4]  Asset Co contends that any

7  demand Forge might make would be fraudulent because it necessarily would include the false

8  claim that the appeal period in the court proceedings expired "without any party having initiated

9  any such appeal."  To make demand under the letter of credit, however, Forge need not make any

10  such statement or claim.  Rather, Forge is obligated only to certify that it is "now entitled to

11  payment of the full amount of such standby letter of credit pursuant to the provisions of that

12  certain Interim Arrangement Deed . . . ."     For the reasons discussed above, Forge has a tenable

13  argument—and likely even the stronger of the two arguments—that condition [B] has been

14  satisfied, even though appeals were taken.  Thus, even assuming Asset Co ultimately were

15  determined to have been correct that a more literal application of condition [B] was required, it

16  would not have been *fraudulent* for Forge to certify that the conditions for payment under the

17  letter of credit had been met.

18        On the present record, the clear intent of condition [B] is to postpone drawing on the letter

19  of credit until any decision in Forge's favor is no longer subject to possible reversal on appeal.  As

20  that circumstance now exists, Asset Co cannot show the requisite likelihood of success to warrant

21  a temporary restraining order.[5]

22

---

[4] At the hearing, counsel for Bank of America represented that the letter of credit was issued from
Pennsylvania, and that in the Bank's view, Pennsylvania's version of the Uniform Commercial
Code should therefore apply, but no party has asserted there is any material difference in the
applicable laws.

[5] Forge also argues it is not subject to personal jurisdiction in this forum, and offers to flesh out
that showing in response to any proceedings for a preliminary injunction.  That issue need not be
resolved at this juncture.  For its part, Asset Co also suggests preliminary relief is warranted in
light of the law and policy that supports arbitration.  While Asset Co may believe that disposition
of the proceeds of the letter of credit will make pursuing arbitration less worthwhile, it has not

1    In light of the record, Asset Co also has not shown grounds for issuance of an order to

2    show cause.  Accordingly, the matter will not be set for a preliminary injunction hearing on this

3    record.

4

5                                    III.  CONCLUSION

6    The motion for a temporary restraining order and an order to show cause why a temporary

7    restraining order should not issue are denied.

8

9

10   **IT IS SO ORDERED**.

11

12   Dated: June 29, 2017

13   _____

14   RICHARD SEEBORG
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26
_____
27   shown any cognizable interference with arbitration that could be mitigated by preliminary relief in
     this action.

28

CASE NO. 17-cv-03621-RS

8